UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHELTON BEACH; and BEVERLY BEACH,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC; XOME, LLC; BANK OF AMERICA, NA; MERS (Mortgage Electronic Registration System); AURORA LOAN SERVICES, LLC; COUNTRYWIDE HOME LOANS; EXPERIAN CORP.; EQUIFAX; TRANSUNION; INNOVIS DATA SOLUTIONS,<br><br>Defendants. | Case No: 4:19-cv-00340-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are a Motion to Dismiss and Motion for Judicial Notice (Dkt. 15) by Defendants Nationstar Mortgage LLC ("Nationstar"), Xome, LLC ("Xome"), Mortgage Electronic Registration System ("MERS"), and Aurora Loan Services LLC's ("Aurora") (collectively hereinafter "Defendants")[1]; Plaintiffs' Motion of Clarification (Dkt. 26); and Plaintiffs' Motion for Temporary Restraining Order (Dkt. 27). The motions

---

[1] The Credit Reporting Agency Defendants (Experian Corp., Equifax, Transunion, and Innovis Data Solutions) have not appeared in this case. Defendants Bank of America, N.A. ("BOA"), and Countrywide Home Loans, Inc. ("Countrywide"), joined in Defendants' Motion to Dismiss. (Dkt. 18). However, BOA and Countrywide filed a Response to Plaintiffs' Motion for Temporary Restraining Order stating they "no longer have an interest in the subject mortgage loan[.]" Dkt. 32, at 2. As used herein, "Defendants" accordingly refers to Nationstar, Xome, MERS, and Aurora.

have been fully briefed and, due to the expedited nature of the matter, the Court enters the following Order.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. BACKGROUND

On August 9, 2019, Plaintiffs Shelton and Beverly Beach ("Plaintiffs") filed a complaint seeking compensatory, injunctive and declaratory relief under "Common Law, Debt Collection Practices Laws of this State, and Consumer Protection Laws" in the Bingham County District Court for the State of Idaho. Dkt. 1-1, Section I. Pursuant to 28 U.S.C. §§ 1332 and 1441(B), Defendants removed the case to this Court on September 3, 2019. Dkt. 1.

Although convoluted, Plaintiffs assert claims arising from their mortgage loan on property located at 28 South 1000 West Blackfoot, Idaho 83221 (the "Property"). On March 7, 2005, Plaintiffs granted a Deed of Trust on the Property (the "Deed of Trust") to Aegis Wholesale Corporation which secured a loan in the amount of $145,000 (the "Loan"), evidenced by a Promissory Note of the same date (the "Note"). Dkt. 16-1, Ex. A; Dkt. 16-2, Ex. B. In the Deed of Trust, Plaintiffs agreed that the Note could be sold without prior notice to Plaintiffs. Dkt. 16-1, Ex. A at ¶ 20. On November 8, 2013, the Deed of Trust was assigned to Nationstar via recorded assignment. Dkt. 16-3, Ex. C. A Successor Trustee

was later substituted, and on April 5, 2019, an Affidavit of Mailing was recorded which evidenced that Plaintiffs defaulted on their Loan on May 1, 2011. Dkt. 16-4, Ex. D; 16-4, Ex. E.

On May 9, 2014, Plaintiffs filed a Chapter 13 bankruptcy. *In re Shelton S. Beach and Beverly S. Beach*, No. 14-40504-JDP (Bankr. D. Idaho 2014) ("Bankruptcy Proceeding"). Dkt. 15-2, Ex. A. On August 11, 2015, Plaintiffs initiated an adversary proceeding against Wells Fargo Bank as Trustee and Nationstar in which they questioned the Defendants' authority to foreclose. *Beach v. Wells Fargo Bank, et al.*, No. 15-08217-JDP (Bankr. D. Idaho 2015) ("Adversary Proceeding"). Dkt. 15-7, Ex. F.

During the Bankruptcy Proceeding, Plaintiffs conceded the validity of the Loan, Nationstar's standing as the secured creditor, and that Nationstar was in possession of the Note with the right to enforce. Dkt. 15-2, Ex. A; Dkt. 15-3, Ex. B at 8; Dkt. 15-4, Ex. C. Further, Plaintiffs affirmed that they signed the original loan documents in their Adversary Complaint. Dkt. 15-7, Ex. F at ¶¶ 15, 16.

Following Plaintiffs' subsequent challenge to Nationwide's standing, the Bankruptcy Court directed counsel for Nationstar to produce the original Note to Plaintiffs for inspection. On May 10, 2016, the Bankruptcy Court held a hearing on the Trustee's Motion to Dismiss the bankruptcy, which Plaintiffs attended. During the hearing, the Court stated, "[w]hat I directed was [counsel for Nationstar] produce the original note." Dkt. 15-5, Ex. D; Dkt. 16-6, Ex. F. Counsel for Plaintiffs responded "[h]e did." *Id*. Plaintiffs' counsel further stated:

[W]e [are] confident that the parties that are here asserting the claim do have

> a note that they could use to enforce. And that being the case, as we had indicated last time that if [it] was the true state of the facts, which it is, we would dismiss our adversary proceeding. And we would also, at this time, ask the Court to go ahead and grant the Trustee's Motion to Dismiss.

*Id.* When pressed by the Bankruptcy Court about the possibility of a subsequent challenge by Plaintiffs or the filing of a new case, Plaintiffs' counsel confirmed that if a loan modification was not obtained, "they're subject to foreclosure, and they're going to accept that[.]" *Id.* The Bankruptcy Court subsequently entered orders dismissing both the Adversary Proceeding and the underlying bankruptcy. Dkt. 15-6, Ex. E; Dkt. 15-8, Ex. G. Despite their representations before the Bankruptcy Court, Plaintiffs filed the instant action to stop the foreclosure on August 9, 2019.

> In their Complaint, Plaintiffs allege they have:
>
> [N]ever seen or inspected, nor had proven to them in open court or otherwise is person, that either Nationstar or their owners or staff or Countrywide and Nationstar together. . . are holders in due course of the original note or original mortgage EVER and she [sic] has not seen any amount claimed that seems to be accurate nor has she seen any representation of [Mr. Beach's] endorsement that seems to be more than a clever forgery.

Dkt. 1-1, Section III at ¶ 7. Plaintiffs further allege that Nationstar and its agents named in suit as defendant, are "not in possession of any original note nor original mortgage, together nor separately and could not produce them." *Id.* at ¶ 8. Based on this premise, Plaintiffs argue Defendants wrongfully "represent[ed] to the credit bureaus and public record offices to make public that Plaintiff owed money and had defaulted and that they had verified the debt in accord with Plaintiffs' demands, knowing full well that none of them ever had." *Id.*

Plaintiffs assert claims for (1) "Unfair Trade Practices"; (2) "Unfair Debt Collection Practices"; (3) "Injurious Falsehood in Breach of Consumer Protections Laws of the State";

(4) "Theft and Conversion"; (5) "Accounting Malpractice and Breach of Contract"; (6) "Economic Loss and Injury"; (7) "Intrastate Private Securities Laws Violation Regarding Private Security"; and (8) "Insurance Claims Processing Avoidance/Evasion." *Id*. at Section IV. They seek clear title to the Property, $358,013.60 in actual damages, and $150,000 in punitive damages. *Id*. at Ex. 1. Defendants moved to dismiss Plaintiffs' suit on September 24, 2019. Dkt. 16. The Motion to Dismiss has been fully briefed.

On November 1, 2019, Plaintiffs filed a "Motion of Clarification" and Motion for Temporary Restraining Order ("TRO") asking the Court to preclude Defendants from conducting a Trustee's Sale of the Property currently scheduled for December 6, 2019.[2] Defendants have responded to the TRO and Plaintiffs have replied.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

The United States Supreme Court has identified two "working principles" that

---

[2] Plaintiffs filed the instant TRO on November 1, 2019, and represented to the Court that the Trustee's Sale of their home was to occur on November 8, 2019. Dkt. 27, at 2. The Notice of Postponed Trustee's Sale submitted by Plaintiffs was dated September 30, 2019. *Id*. With their response brief, Defendants filed a Notice of Postponed Trustee's Sale, dated October 11, 2019, illustrating the Trustee's Sale is now scheduled to occur on December 6, 2019. Dkt. 31, Ex. 1.

underlie *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. at 678. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

A motion to dismiss should not be granted "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg v. Cult Awareness Network*, 18 F. 3d 752, 754 (9th Cir. 1994). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). However, a court is not required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg*, 18 F.3d at 754-55. The purpose of Rule 12(b)(6) is "to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc*., 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

# IV. ANALYSIS

## 1. Jurisdiction

In their Response to Defendants' Motion to Dismiss, Plaintiffs contend this Court lacks jurisdiction because their claims "are not Federal Question," and "there is not complete diversity." Dkt. 23, at 1. Plaintiffs suggest complete diversity is lacking because "[t]he attorney for the other side acting as a debt collector but unknown in name is named and indicated, along with their insurers, to be a codefendant of the Defendants herein named" and "[a]ll ambiguities must be resolved in favor of remand." Dkt. 23, at 3.

Defendants removed this case from the Bingham County Court because this is an action between citizens of different states in which the amount in controversy exceeds $75,000. Dkt. 1, at 3. Plaintiffs do not dispute the amount in controversy, that they are citizens of Idaho, nor that the named defendants are citizens of diverse states. Dkt. 1-1; Dkt. 23. While Plaintiffs suggest an unnamed lawyer or unnamed insurer *may* defeat diversity jurisdiction, the citizenship of any fictitiously named defendants must be disregarded for purposes of diversity jurisdiction. 28 U.S.C. § 1441(b)(1). In enacting 28 U.S.C. § 1441(b)(1), "Congress obviously reached the decision that doe defendants should not defeat diversity jurisdiction." *Bryant v. Ford Motor Co*., 886 F.2d 1526, 1528 (9th Cir. 1989)). The Court accordingly finds it has diversity jurisdiction and rejects Plaintiffs' attempt to seek remand.

## 2. Motion of Clarification

On November 1, 2019, Plaintiffs filed a "Motion of Clarification," stating they have "hundreds of pages showing errors and conflicting answers" in the evidence filed by

Defendants in support of their Motion to Dismiss. Dkt. 26, at 1. Plaintiffs requested "clarification on what and if the documents should be submitted to this court," but did not offer any specification or further explanation of any of the documents they purported to possess. *Id*. at 2. Even if the Court could advise Plaintiffs as to what evidence they should file to support their case, it clearly could not do so in the absence of any information as to the specific evidence Plaintiffs claimed to have.

Further, if Plaintiffs had evidence to refute Defendants' Motion to Dismiss, they were required to file it by their (extended) response deadline. Plaintiffs were initially required to respond to the Motion to Dismiss by October 15, 2019. The Court subsequently granted Plaintiffs' Motion to Extend Time and allowed their response to be filed by October 29, 2019. Dkt. 22. Although Plaintiffs responded to the Motion to Dismiss on October 29, 2019, they did not file any documents in support, and did not file the "Motion of Clarification," which also lacks any evidentiary support, until November 1, 2019. Dkt. 26.

Regardless, the Motion of Clarification is now moot. In their Reply in support of the Motion for Temporary Restraining Order, filed on November 12, 2019, Plaintiffs submitted the documents which purportedly show "why the TRO should be approved and why the case should not be dismissed." Dkt. 35, at 6. Although untimely and improperly submitted with a Reply brief, the Court addresses such documents below.

### 3. Judicial Notice

Plaintiffs refer to the Deed of Trust, Note, and sale efforts, but do not attach copies of the documents to their Complaint. Defendants accordingly ask that the Court take

judicial notice of the Deed of Trust, Promissory Note, Assignment of the Deed of Trust to Nationstar, Appointment of Successor Trustee, and Affidavit of Mailing for Notice of Trustee's Sale. Dkt. 16, at 2-3.

A court may take judicial notice of documents that are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). The Court takes judicial notice of the Deed of Trust, Notice of Assignment, Appointment of Successor Trustee, and Affidavit of Mailing for Notice of Trustee's Sale because they are matters of public record filed with the Bingham County Recorder's Office. Dkt. 16, Exhibits A, C-E; *see Lee v. City of Los Angeles*, 250 F.3d 668, 888-89 (9th Cir. 2001) (courts may take judicial notice of matters of public record).

Although the Note was not recorded and is not a matter of public record, the Note bears the same date, principal amount, terms, and Property as the Deed of Trust already noticed by the Court. Plaintiffs object to the Court taking judicial notice of the Note (or any of the aforementioned documents) because the information provided in such documents "is irrelevant and has no bearing on these proceedings." Dkt. 23, at 4. This contention is clearly inaccurate: Plaintiffs reference the Note throughout the Complaint and it underlies each of Plaintiffs' claims. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Where, as here, Defendants offer such a document, the "the district court may treat such document as part of the complaint, and

thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*. Moreover, Plaintiffs' objection to—or unwillingness to admit—the authenticity of the Note appears to be related to their contention that Defendants must produce the original Note to proceed with the foreclosure. As discussed below, this argument has been repeatedly rejected by the courts. Therefore, the Court will also take judicial notice of the Note. Because a Court may take judicial notice of "recorded real estate documents" and "documents incorporated by reference in the complaint without converting [a] motion to dismiss into a motion for summary judgment," the Court will take judicial notice of Dkt. 16, Exhibits A-E, without converting Defendants' Motion to Dismiss into a Motion for Summary Judgment. *Id.*

Defendants also ask the Court to take judicial notice of various filings in the Bankruptcy Proceeding and Adversary Proceeding. Dkt. 15, Exhibits A-G; Dkt. 16, Ex. F. A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). Additionally, the bankruptcy filings directly relate to the matters at issue here. The Court accordingly takes judicial notice of various filings from the Bankruptcy and Adversary Proceedings. Dkt. 15, Exhibits A-G; Dkt. 16, Ex. F. The Court will consider such noticed documents for purpose of the pending Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ritchi*, 342 F.3d at 907; *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 2004) (a court may consider matters that are subject to judicial notice on a motion to dismiss).

### 4. Motion to Dismiss

#### A. Plaintiffs Cannot Quiet Title Without Tendering Payment

Although they do not expressly enumerate such claim, Plaintiffs ask that the Court quiet title in the Property, requesting a declaration that they are the owners of the Property "outright free and clear to the exclusion of all others and nullifying forever all others' claims of ownership or obligation against Plaintiffs relating to it." Dkt. 1-1, Section IX at 2.D. Plaintiffs, have not, however, alleged an ability or willingness to tender the balance due on their Loan. This omission is fatal to Plaintiffs' attempt to quiet title. *Hobson v. Wells Fargo Bank, N.A.*, 2012 WL 505917, *3 (D. Idaho 2012) (quoting *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952)). In Idaho, "[a] mortgager cannot without paying his debt quiet title as against the mortgagee." *Trusty*, 249 P.2d at 817 (internal quotation marks and citation omitted).

The tender rule has been the accepted standard in quiet title suits seeking equitable relief for more than 100 years. In *Power & Irrigation Co. of Clear Lake*, the Ninth Circuit explained that regardless of possession by the grantee of the mortgage, the grantor of the mortgage could remove the cloud on the title upon "doing equity by redemption and payment of the mortgage debt" and that "he must do equity by payment of the balance of the debt, as a condition of removing the cloud," even if the lien of the mortgage was extinguished. 226 F. 634, 639 (9th Cir. 1915). The *Power* Court held that, even though the right to enforce the mortgage by foreclosure had expired by limitation, the plaintiff was required, in equity, to pay the mortgage debt to obtain relief in a quiet title action. *Id.* at 640-41; *see also Platts v. Pac. First Fed. Sav. & Loan Ass'n of Tacoma*, 111 P.2d 1093,

1097 (Idaho 1941) ("equity will not remove a cloud on the title to real estate, occasioned by the owner's failure to pay a valid debt, while the debt remains unpaid.").

Notably absent from Plaintiffs' 30-page Complaint are any allegations that they have satisfied their Loan or have even made a payment since their original default in 2011. Instead, Plaintiffs allege that they "timely unconditionally promised to honor the conditions of any. . . valid contract agreement. . . upon presentment and exhibition of the originals (note and mortgage)" and upon "proof that the parties making demands were in fact holders-in-due course of the ORIGINAL NOTE AND MORTGAGE DOCUMENTS BEARING ENDORSEMENT OF THE INDIVIDUAL PRIVATE CONSUMER AGAINST WHOM THEY WISH TO ENFORCE THEIR DEMANDS[.]" Dkt. 1-1, Section III at ¶ 5 (emphasis in original). Plaintiffs claim Defendants never produced the original Note and Mortgage. *Id*. at ¶ 8. Even if Plaintiffs could prove that Defendants did not present them with the original Note and Mortgage, which, as explained below, they cannot, Plaintiffs are not entitled to quiet title in the property without first satisfying their debt. This Court "is not in the position to award plaintiffs a windfall." *Kham v. Exec. Trustee Services, LLC*, 2012 WL 967864, *15 (E.D. Cal. 2012). Without evidence that Plaintiffs can or are even willing to tender payment on their Loan, Plaintiffs cannot succeed on a quiet title action as a matter of law. *Cherian v. Countrywide Home Loans, Inc*., 2012 WL 2865979, *2 (D. Idaho 2012).

### B. Defendants Need Not Produce the Original Note in Order to Foreclose

Plaintiffs' primary contention in this suit is that Defendants must produce the original Note in order to foreclose, and that Defendants lack standing to collect payments

on the Note or to foreclose on the Property in the absence of such production. The Idaho

Supreme Court has flatly rejected Plaintiffs' "show me the Note" theory as a tactic to avoid

an otherwise legal non-judicial foreclosure. *Trotter v. Back of New York Mellon*, 275 P.3d

857, 862 (Idaho 2012). This Court has also repeatedly rejected debtors' attempts to avoid

foreclosure by questioning the authenticity of a recorded promissory note and seeking

production of the original. *Cherian*, 2012 WL 2865979 at *3; *Hofhines v. BAC Home

Loans Serving, L.P.*, 2012 WL 3440458, *3 (D. Idaho 2012) *adopted by* 2012 WL 3438327

(D. Idaho 2012); *Gilbert v. Bank of America Corp.*, 2012 WL 4470897, *6 (D. Idaho 2012).

In conformance with the Idaho Supreme Court's interpretation of Idaho law, and the

aforementioned cases, this Court likewise rejects Plaintiffs' argument that Defendants lack

the ability and standing to foreclose unless they produce the original Note.

### C. Securitization of the Note Does Not Impact the Right to Foreclose

Plaintiffs also vaguely imply that securitization of the loan impacts Defendants'

interest in the Property or otherwise affects their right to foreclose. Dkt. 1-1, Section IV.g.

"This is not a new battlefield. Several courts have rejected various theories that

securitization of a loan somehow diminishes the underlying power of sale that can be

exercised upon a trustor's breach." *Washburn v. Bank of America, N.A.*, 2011 WL 7053617,

*4-5 (D. Idaho 2011) (quoting *West v. Bank of America*, 2011 WL 2491295 at *2) (D. Nev.

2011)); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal.

2009) (rejecting plaintiff's theory that defendants "lost their power of sale pursuant to the

deed of trust when the original promissory note was assigned to a trust pool"); *Chavez v.

California Reconveyance Co.*, 2010 WL 2545006, *2 (D. Nev. 2010) ("The alleged

securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course.").

Plaintiffs' nebulous allegations do not convince the Court that securitization of the loan somehow impacted Defendants' right to foreclose. Plaintiffs allege no facts to suggest that Defendants have already collected once. Nor do Plaintiffs allege that they have received any competing or duplicative requests for payment. Rather, all the evidence shows that Plaintiffs owe over $200,000 on their Loan. *See, e.g.*, Dkt. 16-5, Ex. E. Plaintiffs defaulted on their Loan obligations and the documents they signed in connection with obtaining the Loan state that the Property may be sold in a non-judicial foreclosure sale under these circumstances. Dkt. 16-1, Ex. A. Securitization of the Loan does not discharge Plaintiffs' clear contractual obligation to repay the Loan.

### D. All of Plaintiffs' Claims are Precluded by Judicial Estoppel

Notably, Plaintiffs' claims are based on their allegations that they have never seen or inspected the original Note, that Defendants have not proved they possess the original Note, and that Plaintiffs are not required to make Loan payments as a result. Dkt. 1-1, Section III. These contentions directly contradict the position Plaintiffs took in their Bankruptcy Proceedings and are therefore precluded by judicial estoppel.

Judicial estoppel precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996). Because it is intended to protect the integrity of the judicial process, judicial estoppel is an equitable doctrine invoked by a court at its discretion. *Russell v. Rolfs*, 893 F.2d 1033, 1037

(9th Cir. 1990). A court may invoke judicial estoppel not "only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell*, 893 F.2d at 1037)).

The United States Supreme Courts has listed three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel: (1) a party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to accept its prior position; and (3) the party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton*, 270 F.3d 778, 783 (citing *Rissetto*, 94 F.3d at 605)); *see also Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp*., 910 F.2d 1540, 1548 (7th Cir.1990) (estoppel is even more appropriate where the incompatible statements are made in two different cases, since "[i]nconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit).

In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Hay v. First Interstate Bank of Kalispell, N.A*., 978 F.2d 555, 557

(9th Cir.1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estopped the debtor from prosecuting that cause of action); *Dzakula v. McHugh*, 746 F.3d 399, 401 (9th Cir. 2014) (judicial estoppel applied where plaintiff-debtor failed to list a potential action or claim in a bankruptcy proceeding, resulting in dismissal of subsequent lawsuit based on the omitted claim); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir.1999) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc*., 989 F.2d 570, 572 (1st Cir. 1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988) (debtor's failure to list potential claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect").

Here, as set forth in Section II, *supra*, Plaintiffs clearly took an inconsistent position in their proceedings before the Bankruptcy Court, where Plaintiffs conceded the validity of the Loan, Nationstar's standing as the secured creditor, and that Nationstar was in possession of the Note with the right to enforce. Specifically, in their Voluntary Petition, filed under penalty of perjury, Plaintiffs admitted Nationstar was the secured creditor on their residence, and, given the opportunity to "dispute" the debt on Schedule D, Plaintiffs affirmed there was no dispute. Dkt. 15-2, Ex. A at 25. Plaintiffs also identified Nationstar as a creditor for the Property in their Amended Chapter 13 Plan. Dkt. 15-3, Ex. B at 8. The Amended Chapter 13 Plan was confirmed on September 9, 2014, and was thus binding as

to Plaintiffs and Nationstar with respect to the terms set forth therein. Dkt. 15-4, Ex. C; *see also In re Quist*, 2002 WL 33939726, *3 (D. Idaho 2002) (confirmed Chapter 13 Plan was *res judicata* to issues therein) (citing *In re Pardee*, 193 F.3d 1083, 1087 (9th Cir. 1999)). Plaintiffs also conceded that they executed the Loan documents in their Adversary Proceeding. Dkt. 15-7, Ex. F at ¶¶ 15-16.

Perhaps most significantly, Plaintiffs have already inspected the original Note, and conceded as much, during proceedings before the Bankruptcy Court. Dkt. 15-5, Ex. D; *see also* Dkt. 16-6 (counsel for Plaintiffs stating, "As the Court directed Nationstar to deliver a copy of the original note and allonges, they did so this afternoon."). Plaintiffs further confirmed through their counsel that if they could not attain a loan modification, "they're subject to foreclosure, and they're going to accept that." *Id*. Plaintiffs' counsel also specifically stated: "[W]e are confident that the parties that are here asserting the claim **do have a note that they could use to enforce**. And that being the case, as we had indicated last time that if [it] was the true state of the facts, **which it is**, we would dismiss our adversary proceeding." *Id*. United States Bankruptcy Judge Jim Pappas also verified Plaintiffs' position, stating:

> So, make sure I'm understanding correctly. Based upon production of the original note and associated paperwork by Counsel for the creditor today, it's now the debtor's desire to allow an Order to be entered granting the Trustee's Motion to dismiss the Chapter 13 case. And an Order dismissing the pending adversary proceeding. . . . Is that correct?

*Id*. Plaintiffs' counsel responded, "Yes Your Honor." *Id*.

Plaintiffs' claim in this case that they have "never seen or inspected, nor had proven to them in open court or otherwise in person, that either Nationstar. . . or Countrywide. . .

are the holders in due course of the original note or original mortgage EVER," is expressly

negated by the record before the Bankruptcy Court. Dkt. 1-1, Section III at ¶ 7 (emphasis

in original). Plaintiffs also succeeded in persuading the Bankruptcy Court to accept their

prior position because the Bankruptcy Court relied on Plaintiffs' representation as the basis

of their request for dismissal, and thereafter entered orders dismissing both the Adversary

Proceeding and underlying Bankruptcy. Dkt. 15-6, Ex. E; Dkt. 15-8, Ex. G; Dkt. 16-6.

Apparently for the first time in this proceeding, Plaintiffs now allege their signatures

on the Note are a "clever forgery." Dkt. 1-1, Section III at ¶ 7. Because Plaintiffs failed to

claim that the original Note was forged in their prior bankruptcy proceeding, Plaintiffs

would gain an unfair advantage if they are not judicially estopped—including the ability to

continue to live during the instant proceeding in a Property they apparently haven't made

payments on since 2011. Moreover, had Plaintiffs claimed that the original Note was forged

in their prior Bankruptcy Proceeding, Nationstar would have had the opportunity to

investigate and respond at that time to avoid the ensuing delays and litigation costs.

Plaintiffs' only response to Defendants' judicial estoppel argument is the claim:

> Where any creditor acts in such a manner as to force involuntary bankruptcy,
> as is the case here, where there has been predatory lending practices at least
> and where no mitigation nor retention options were duly provided with
> reasonable likelihood of adoption and agreement, the proper thing to do is
> file bankruptcy and reorganize. So the suggestion that accessing the courts
> for such purposes is somehow inappropriate or favors the position of the
> Defendants is improper[.]

Dkt. 23, at 4. Plaintiffs misunderstand Defendants' position. Defendants do not contend

Plaintiffs are judicially estopped from bringing the instant suit because Plaintiffs previously

filed bankruptcy. Instead, Plaintiffs are judicially estopped from contesting the validity of

the Loan by claiming they have never seen the original Note when Nationstar clearly provided them with the original Note. Dkt. 16-6. Plaintiffs are also judicially estopped from denying Nationstar's standing as the secured creditor on their residence or that Nationstar is in possession of the Note with the right to enforce when they conceded the aforementioned facts during the Bankruptcy and Adversary Proceedings. Finally, Plaintiffs new claim that the Note is a "clever forgery" directly contradicts their admission that they signed the original loan documents in their Adversary Complaint. In sum, Plaintiffs either misled the Bankruptcy Court or are now committing a fraud on this Court. Accordingly, Plaintiffs are judicially estopped from pursuing their claims against Defendants and the Court grants Defendants' Motion to Dismiss.

### E.  Leave to Amend

Even where, as here, a party has not requested leave to amend, a dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen*, Inc., 573 F.3d 728, 737 (9th Cir. 2009). In their Response to Defendants' Motion to Dismiss, Plaintiffs identify no facts that could cure the current Complaint's deficiencies. Plaintiffs do not submit any evidence to establish that they have made loan payments since they originally defaulted in 2011. Nor do Plaintiffs dispute that the basis for this suit is expressly contradicted by their filings before the Bankruptcy Court. Moreover, Plaintiffs' legal arguments have been uniformly rejected by the courts, including this Court.

However, in the Reply in Support of the Motion for Temporary Restraining Order, Plaintiffs for the first time submit a number of documents, including correspondence with

Nationstar. Although again difficult to decipher, Plaintiffs appear to suggest such documents show they obtained a loan modification after their bankruptcy, made loan payments that should have been applied to the new loan, and/or were given false information by Nationwide at various times regarding the amount due on their loan. Dkt. 35, Exhibits 1-3. Although this information is not properly before the Court given its untimely and improper submission in Reply to the Motion for Temporary Restraining Order, and Defendants have not had the opportunity to address the new allegations, the Court is unable to unequivocally determine the Complaint could not be saved by any amendment in light of Plaintiffs' belated submission.[3] While dismissal is accordingly without prejudice, Plaintiffs are advised that the Court will not entertain the claims already discussed and dismissed herein should they choose to amend.

### 5. Motion for Temporary Restraining Order/TRO

A plaintiff seeking a preliminary injunction must establish a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, that the balance of equities tips in favor of an injunction, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). Plaintiffs request a temporary restraining order without addressing any of the elements required to obtain injunctive relief. Dkt. 27. Regardless, where, as here, plaintiffs cannot successfully defend against a motion dismiss, there is no likelihood of success on the merits and the preliminary injunction standard cannot be satisfied. *Rheinschild Family Trust v. Rankin*, 2016 WL

---

[3] The Court notes Defendants have not provided the Court with any information regarding the activity on Plaintiffs' Loan between 2016, when the Bankruptcy and Adversary Proceedings were dismissed, and April, 2019, when Defendants appear to have initially scheduled the impending Trustee's Sale.

1170945, *2 (D. Idaho 2016).

## V. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss and Motion to Take Judicial Notice (Dkt. 15) is **GRANTED**;

    a. The Court takes judicial notice of Dkt. 15, Exhibits A-G, and Dkt. 16, Exhibits A-F;

    b. This case is **DISMISSED without prejudice.** Plaintiffs have thirty (30) days from the date of this Order to file an Amended Complaint.

2. Plaintiffs' Motion of Clarification (Dkt. 26) is **MOOT** and is therefore **DENIED**;

3. Plaintiffs' Motion for a Temporary Restraining Order (Dkt. 27) is **DENIED**.

DATED: December 2, 2019

David C. Nye
Chief U.S. District Court Judge