IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHELTON BEACH; and BEVERLY BEACH, | ) ) ) |
| Plaintiffs, | ) ) ) ) |
| vs. | ) ) ) |
| NATIONSTAR MORTGAGE LLC; XOME, LLC; BANK OF AMERICA, NA; MERS (Mortgage Electronic Registration System); AURORA LOAN SERVICES, LLC; COUNTRYWIDE HOME LOANS; EXPERIAN CORP.; EQUIFAX; TRANSUNION; INNOVIS DATA SOLUTIONS, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No: 4:19-cv-00340-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Pending before the Court is Plaintiffs' "Motion to Rescind Memorandum of Decision and Order and Steven Davis, Private Investigator in Mining and Real Estate Fraud, Requests a 45 Day Extension" (Dkt. 37), which the Court will construe as a Motion for Reconsideration. Also pending is Plaintiffs' "Motion to Rescind Memorandum of Decision and Order and Remove Judge Nye I.R.C.P. 63 Judges Inability to Proceed and Request 45 Day Extension" (Dkt. 42), which the Court will construe as a Motion for Recusal.[1]

Having fully reviewed the record herein, the Court finds that the facts and legal

---

[1] Defendants did not respond to the Motion for Recusal.

arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court will DENY the Motion for Reconsideration and DENY the Motion for Recusal.

## II. BACKGROUND

On August 9, 2019, Plaintiffs Shelton and Beverly Beach ("Plaintiffs") filed a complaint seeking compensatory, injunctive and declaratory relief under "Common Law, Debt Collection Practices Laws of this state . . . and Consumer Protection laws of this state" in the Bingham County District Court for the State of Idaho. Dkt. 1-1, Section I, ¶ 1. Pursuant to 28 U.S.C. §§ 1332 and 1441(B), Defendants removed the case to this Court on September 3, 2019. Dkt. 1.

Plaintiffs asserted claims arising from their real property loan on property located at 28 South 1000 West Blackfoot, Idaho 83221 (the "Property"). On March 7, 2005, Plaintiffs granted a Deed of Trust on the Property (the "Deed of Trust") to Aegis Wholesale Corporation which secured a loan in the amount of $145,000 (the "Loan"), evidenced by a Promissory Note of the same date (the "Note"). Dkt. 16-1; Dkt. 16-2.[2] In the Deed of Trust, Plaintiffs agreed that the Note could be sold without prior notice to Plaintiffs. Dkt. 16-1, at ¶ 20. On November 8, 2013, the Deed of Trust was assigned to Nationstar via recorded assignment.[3] Dkt. 16-3. A Successor Trustee was later substituted, and on April 5, 2019,

---

[2] This Court previously took judicial notice of all records referenced herein. Dkt. 36, at 8–10.
[3] In the Motion for Reconsideration, Plaintiffs allege the recorded assignment is a "false recorded document" and that "Nationstar submitted a false document to the Court and it is not what is in the public

an Affidavit of Mailing was recorded which evidenced that Plaintiffs defaulted on their Loan on May 1, 2011. Dkt. 16-4; Dkt. 16-5.

On May 9, 2014, Plaintiffs filed a Chapter 13 bankruptcy. *In re Shelton S. Beach and Beverly S. Beach*, No. 14-40504-JDP (Bankr. D. Idaho 2014) ("Bankruptcy Proceeding"). Dkt. 15-2. On August 11, 2015, Plaintiffs initiated an adversary proceeding against Wells Fargo Bank as Trustee for SARM 2005-14 and Nationstar in which they questioned the Defendants' authority to foreclose. *Beach v. Wells Fargo Bank, et al.*, No. 15-08217-JDP (Bankr. D. Idaho 2015) ("Adversary Proceeding"). Dkt. 15-7.

Plaintiffs identified Nationstar as a creditor for the Property in their Amended Chapter 13 Plan, which was confirmed on September 9, 2014, and was thus binding as to Plaintiffs and Nationstar with respect to terms set forth therein. During the Bankruptcy Proceeding, Plaintiffs also conceded the validity of the Loan, Nationstar's standing as the secured creditor, and that Nationstar was in possession of the Note with the right to enforce. Dkt. 15-2; Dkt. 15-3; Dkt. 15-4. Further, Plaintiffs affirmed that they signed the original loan documents in their Adversary Complaint. Dkt. 15-7, at ¶¶ 15, 16.

Following Plaintiffs' subsequent challenge to Nationwide's standing, the Bankruptcy Court directed counsel for Nationstar to produce the original Note to Plaintiffs for inspection. On May 10, 2016, the Bankruptcy Court held a hearing on the Trustee's Motion to Dismiss the bankruptcy, which Plaintiffs attended. During the hearing, the Court stated, "[w]hat I directed was [counsel for Nationstar and Wells Fargo] produce the original

---

record." Dkt. 37, at 3. However, as previously explained by the Court, and as again highlighted below, Plaintiffs are judicially estopped from challenging the validity of the assignment given their contrary representations in their bankruptcy proceedings. Dkt. 36, at 15–19.

note." Dkt. 15-5; Dkt. 16-6. Counsel for Plaintiffs responded "[h]e did." *Id*. Plaintiffs'

counsel further stated:

> He did, and [he] brought the alloonges as well, which was important to us
> because as we talked about earlier with the Court, the allonge we had a copy
> of and the proof of claim was at odds with another copy we had seen. So we
> actually got to see the original allonge. So we were confident that the parties
> that are here asserting the claim do a have a note that they could use to enforce.
> And that being the case, as we had indicated last time that if [it] was the true
> state of the facts, which it is, we would dismiss our adversary proceeding.
> And we would also, at this time, ask the Court to go ahead and grant the
> Trustee's Motion to Dismiss.

Dkt. 16-6, at 2–3.

When pressed by the Bankruptcy Court about the possibility of a subsequent

challenge by Plaintiffs or the filing of a new case, Plaintiffs' counsel confirmed that if a

loan modification was not obtained, "they're subject to foreclosure, and they're going to

accept that[.]" *Id*. The Bankruptcy Court subsequently entered orders dismissing both the

Adversary Proceeding and the underlying bankruptcy. Dkt. 15-6; Dkt. 15-8. Despite their

representations before the Bankruptcy Court, Plaintiffs filed the instant action to stop the

foreclosure on August 9, 2019.

In their Complaint, Plaintiffs alleged they had:

> [N]ever seen or inspected, nor had proven to them in open court or otherwise
> is person, that either Nationstar or their owners or staff or Countrywide and
> Nationstar together. . . are holders in due course of the original note or
> original mortgage EVER and she [sic] has not seen any amount claimed that
> seems to be accurate nor has she seen any representation of [Mr. Beach's]
> endorsement that seems to be more than a clever forgery.

Dkt. 1-1, Section III, ¶ 7 (emphasis in original). Plaintiffs further alleged that Nationstar

and its agents, were "not in possession of any original note nor original mortgage, together

nor separately and could not produce them." *Id*. at ¶ 8.

Plaintiffs asserted claims for (1) "Unfair Trade Practices"; (2) "Unfair Debt Collection Practices"; (3) "Injurious Falsehood in Breach of Consumer Protections Laws of the State"; (4) "Theft and Conversion"; (5) "Accounting Malpractice and Breach of Contract"; (6) "Economic Loss and Injury"; (7) "Intrastate Private Securities Laws Violation Regarding Private Security"; and (8) "Insurance Claims Processing Avoidance/Evasion." *Id*. at Section IV, a-h. They sought clear title to the Property, $358,013.60 in actual damages, and $150,000 in punitive damages. *Id*. at Ex. 1.

Defendants moved to dismiss Plaintiffs' suit on September 24, 2019. Dkt. 16. On November 1, 2019, Plaintiffs filed a "Motion of Clarification" and Motion for Temporary Restraining Order ("Motion for TRO") asking the Court to preclude Defendants from conducting a Trustee's Sale of the Property. After finding, *inter alia*, that Plaintiffs' claims were barred by judicial estoppel because Plaintiffs acknowledged the loan's validity and Nationstar's standing as the secured creditor for the Property in their prior bankruptcy proceedings, the Court dismissed Plaintiffs' claims without prejudice and denied the Motion for TRO on December 2, 2019 ("Dismissal Order"). *See generally*, Dkt. 36.

However, because Plaintiffs submitted documents in support of their Reply to the Motion for TRO suggesting that after their bankruptcy, they may have obtained a loan modification, may have made loan payments that should have been applied to the new loan, and/or were given false information by Nationwide at various times regarding the amount due on their loan, the Court allowed Plaintiffs thirty days to file an Amended Complaint regarding events that may have occurred *after* the bankruptcy proceedings.

Notwithstanding this opportunity to amend, the Court advised Plaintiffs that it would not entertain the claims already discussed and dismissed. *Id*. at 20.

On December 30, 2019, three days before the deadline to file an amended complaint, Plaintiffs filed the Motion for Reconsideration, requesting that the Court rescind the Dismissal Order until all information could be provided to the Court, and seeking a 45-day extension to submit an Amended Complaint. Dkt. 37, at 2. Plaintiffs further asked that the Court allow Steven Davis, "the nation's leading Fraud Expert in Mining and Real Estate," to "either be a friend of the court and independent expert witness on the fraud in this case or to provide the expertise needed in filing an amended complaint." *Id*. at 9. Finally, Plaintiffs submitted various documents to attack the loan's validity, Nationwide's standing to enforce the note, and Nationwide's purported intention to deny Plaintiffs a loan modification. Dkt. 38.

Defendants opposed Plaintiffs' Motion for Reconsideration, noting there was no reason for the Court to rescind the Dismissal Order or to grant an extension for Plaintiffs to file an Amended Complaint based on the claims the Court had already rejected, and highlighting that Steven Davis has been declared a vexatious litigant in multiple jurisdictions, including in Idaho state court. *See generally*, Dkt. 40. Rather than filing a Reply by their January 30, 2020 deadline for doing so, Plaintiffs instead filed the Motion for Recusal on February 10, 2020. Dkt. 42. The Motion for Recusal repeats the same arguments as the Motion for Reconsideration, but additionally seeks removal of the undersigned Judge because he purportedly came into the case "tainted [] and refused to look at or acknowledge the fraudulent documents submitted to the court, or to acknowledge

MEMORANDUM DECISION AND ORDER - 6

the merits of this case." *Id*. at 3.

## III. DISCUSSION

The Court will address each Motion in turn, beginning with the Motion for Reconsideration.

### A. Motion for Reconsideration (Dkt. 37)

#### 1. Legal Standard

Although Plaintiffs do not cite any legal standard to support reconsidering or rescinding the Dismissal Order, the Ninth Circuit has stated that motions to reconsider should be treated as motions to alter or amend under Federal Rule of Civil Procedure 59(e). *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1419 (9th Cir. 1984). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations and citation omitted). As a result, the Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence; or (3) the need to correct clear error. *Id*. (citing *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Regardless of the standard or rule under which they are brought, "motions for reconsideration are generally disfavored and may not be used to present new arguments or evidence that could have been raised earlier." *American Rivers v. NOAA Fisheries*, 2006 WL 1983178, at *2 (D. Or. July 14, 2006) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)) (holding trial court did not abuse its discretion in denying motion for reconsideration because the moving party presented no arguments

which the court had not already considered).

    2. *Analysis*

    a. <u>Motion for Clarification and Opportunity to Amend</u>

Plaintiffs first challenge the Dismissal Order based on the Court's purported failure to respond to their "Motion of Clarification," filed on November 1, 2019, in which Plaintiffs requested "a clarification on what and if documents should be submitted to this court at this time to provide support of a 'denial' for the defendants Motion to Dismiss." Dkt. 26, at 1–2 (quotations in original). Plaintiffs' criticism is inapposite for several reasons. First, a Court is neither required nor authorized to "respond" to a litigant's Motion; opposing counsel may respond, and the Court ultimately issues a decision after reviewing the parties' briefs. Plaintiffs were not entitled to an "answer to the Motion of Clarification" until they received the Court's Order denying the same as moot. Dkt. 37, at 2.

Next, in denying the Motion of Clarification, the Court noted "[e]ven if the Court could advise Plaintiffs as to what evidence they should file to support their case, it clearly could not do so in the absence of any information as to the specific evidence Plaintiffs claimed to have." Dkt. 36, at 8. In their Motion for Reconsideration, Plaintiffs argue the "clarification was about when our rebuttal could be submitted not what information should be presented." Dkt. 37, at 2. However, as the Court also noted in the Dismissal Order, the deadline for filing any documents to oppose the Motion to Dismiss had already passed by the time Plaintiffs filed their Motion of Clarification.[4] Dkt. 36, at 8. The Court could not

---

[4] Plaintiffs erroneously suggest that they "were given 5 days to present a reason why this case should not be dismissed." Dkt. 37, at 2. Defendants filed their Motion to Dismiss on September 24, 2019, and Plaintiffs initial response deadline was October 15, 2019. Dkt. 16. Plaintiffs' response deadline was subsequently

provide guidance as to the appropriate time for filing documents when Plaintiffs first asked for such assistance *after* the deadline for filing such documents had expired.

Finally, and most importantly, Plaintiffs subsequently submitted the documents referenced in the Motion of Clarification in their Reply in support of their Motion for TRO,[5] and the Court ultimately considered and addressed such documents (even though they were untimely filed) in its Dismissal Order. *Id*. at 8. In fact, such documents were the basis for the Court's decision to allow Plaintiffs an opportunity to amend. *Id*. at 20. The Court did not "ignore" such documents, as Plaintiffs now contend (Dkt. 37, at 2), but instead carefully reviewed them and determined Plaintiffs may have been able to amend their Complaint to state a viable claim for Defendants' actions *after* Plaintiffs' bankruptcy was dismissed. Dkt. 36, at 20. That Plaintiffs failed do so within thirty days, as ordered by the Court, is not justification for rescinding the Court's Order.

Nor can the Court grant Plaintiffs' request for additional time to file an amended complaint when Plaintiffs seek such extension not to file a complaint regarding

---

extended, upon Plaintiffs' request, to October 29, 2019. Dkt. 22. Plaintiffs had *more* time than the Local Rules allow to establish why their case should not be dismissed. Plaintiffs' confusion appears to be related to the Court's expedited briefing schedule with respect to Plaintiffs' Motion for TRO, filed on November 1, 2019, wherein Defendants were given until November 5, 2019 to file a response given the foreclosure then scheduled for November 8, 2019. Dkt. 28. When the foreclosure was later postponed to December 6, 2019, the Court allowed Plaintiffs an opportunity to file a reply brief in support of their Motion for TRO. Dkt. 33. If the foreclosure had not been postponed, Plaintiffs would not have had time to file *any* reply given the exceedingly short time frame between the date the Motion for TRO was filed and the scheduled foreclosure sale. The Court was able to allow Plaintiffs a reply solely because the foreclosure was extended. That the time frame for doing so was short was not a function of the Court's discretion, but rather necessitated by the looming foreclosure.

[5] *See, e.g*., Dkt. 35, at 5 (stating "[a]ttached are documents previously made up that contains many reasons why this case should not be dismissed[.]"). Plaintiffs filed approximately 130 pages with their Reply in Support of the Motion for TRO.

Defendants' actions after the bankruptcy was dismissed, but instead to relitigate Defendants' conduct prior to the bankruptcy. *See generally*, Dkt. 37; Dkt. 38; Dkt. 42. Plaintiffs' requested extension to file pre-bankruptcy claims is denied because the Court has already addressed such claims and determined they are legally barred under both extensive precedent and the doctrine of judicial estoppel. Dkt. 36, at 11–19.

    b.  "Change of Venue"

Plaintiffs next challenge the purported "change of venue requested by the Defendants." Dkt. 37, at 2. The "venue" of this case was not changed; the case was simply reassigned from Magistrate Judge Candy W. Dale[6] to the undersigned District Judge. Both of the aforementioned judges decide cases for the federal court of the District of Idaho which, as the Court explained in its Dismissal Order, has diversity jurisdiction over this case. Dkt. 36, at 7. Where, as here, a case is originally assigned to a Magistrate Judge, it will automatically be reassigned to a District Judge if, again as occurred here, any party does not affirmatively consent to the Magistrate Judge's jurisdiction within 60 days. Once reassigned to a District Judge, the matter proceeds as if the case was originally assigned to a District Judge.

Plaintiffs also contend that, because she set a telephonic scheduling conference ("TSC") on September 5, 2019[7] shortly after this case was filed, Judge Dale "appeared to

---

[6] Plaintiffs repeatedly refer to Judge Dale as "Judge Day." *See generally*, Dkt. 37; Dkt. 42. As this case was originally assigned to Judge Dale, and Judge Dale entered the orders in this case prior to its reassignment, the Court assumes Plaintiffs intend to refer to Judge Dale.

[7] On September 5, 2019, Judge Dale issued a Litigation Order and Notice of TSC set for October 21, 2019. Dkt. 9. When Defendants subsequently filed a Motion to Dismiss, the TSC was vacated and reset for December 11, 2019. Dkt. 21.

MEMORANDUM DECISION AND ORDER - 10

want to hear the case, had provided a schedule of events including a conference in mid-December, and was willing to allow this case to have all information presented and litigated."[8] Dkt. 37, at 2. Once the case was reassigned, Plaintiffs suggest the Court instead changed all dates with discovery and conferences and denied Plaintiffs an opportunity to respond to "the Nationstar false documents presented to this Court." Dkt. 37, at 2. The Court did not deny Plaintiffs an opportunity to respond to Nationstar's arguments or evidence, but instead considered every document and brief Plaintiffs filed with the Court, including documents improperly submitted with their Reply in support of the Motion for TRO, before issuing its decision.

Moreover, the Court's rapid decision in this case was necessary due to the relief requested in the Motion for TRO. At the time of the Court's December 2, 2020 Dismissal Order, the foreclosure was scheduled for December 6, 2020. The Court could not grant the TRO without first finding Plaintiffs were likely to succeed on the merits of their claims. *See, e.g., Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (explaining a likelihood of success on the merits is one of the four elements a party must establish to obtain injunctive relief). The Court could not make such assessment without first considering the Motion to Dismiss, as Plaintiffs could not succeed on the merits of their claims if such claims were untenable. *Rheinschild Family Trust v. Rankin*, 2016 WL 1170945, at *2 (D. Idaho March 24, 2016) (noting a plaintiff's inability to defend against a motion to dismiss

---

[8] A Litigation Order and TSC are routinely sent out by Court staff for each Judge of the District of Idaho once a case is filed. Where, as here, the parties file motions prior to the TSC, or if the parties otherwise stipulate to case deadlines, the TSC is typically vacated because such filings may render the TSC unnecessary.

is fatal to plaintiff's request for injunctive relief).

In short, the Court's quick decision in this case was necessitated by the nature of the relief Plaintiffs sought and the imminent foreclosure. Nonetheless, the Dismissal Order was not entered until Plaintiffs had a complete opportunity to respond to Nationstar's Motion to Dismiss, including by submitting evidence to the Court. Plaintiffs were not denied an opportunity to respond to Nationstar's arguments or to present their case; Plaintiffs' arguments were instead rejected because they expressly contradicted prior representations and filings Plaintiffs made regarding the same facts and issues in their Bankruptcy Proceeding.

    c.  <u>Assistance of Steven Davis</u>

Finally, Plaintiffs argue they should be given an extension to submit an Amended Complaint because Steven Davis, a private investigator and the nation's purported "leading Fraud Expert in Mining and Real Estate" has spoken with and alerted Nationstar's counsel as to his findings of "[f]raud upon the Court within this case." Dkt. 37, at 3. Regardless of who Mr. Davis is or whether he has been declared a vexatious litigant by other courts, it is clear that Plaintiffs seek Mr. Davis's assistance to file an amended complaint regarding Nationstar's purported misconduct prior to the bankruptcy. *Id*. at 3–6. Again, however, Plaintiffs conceded the validity of the Loan, Nationstar's standing as the secured creditor on their residence, and that Nationstar was in possession of the Note with the right to foreclose during their Bankruptcy Proceeding. Dkt. 36, at 16–17. Plaintiffs' suggestions that the assignment to Nationstar is "false and outdated" and that there is a "corrupted chain of title" are foreclosed by the contrary filings and statements they made in their Bankruptcy

Proceeding and cannot be raised in an Amended Complaint. As such, Davis cannot assist

Plaintiffs in contradicting such representations now.[9] Dkt. 37, at 3–6.

### B. Motion for Recusal (Dkt. 42)

#### 1. *Legal Standard*

The standard for disqualification of a judge is established by 28 U.S.C. §§ 144 and

455. Section 144 permits a party seeking disqualification to file a "timely and sufficient

affidavit" setting forth the basis for the party's belief that "the judge before whom the

matter is pending has a personal bias or prejudice either against him or in favor of any

adverse party." 28 U.S.C. § 144. The affidavit must "state facts and the reasons for the

belief that bias or prejudice exists." *Id*. The potentially applicable provision of § 455

provides: "Any justice, judge, or magistrate judge of the United States shall disqualify

himself in any proceeding in which his impartiality might reasonably be questioned." 28

U.S.C. § 455(a); *see also United States v. Hernandez*, 109 F.3d 1450, 1453–54 (9th Cir.

1997).

The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is

the same: "[W]hether a reasonable person with knowledge of all the facts would conclude

that the judge's impartiality might reasonably be questioned." *United States v. Studley*, 783

F.2d 934, 939 (9th Cir.1986) (quotation omitted). Ordinarily, the alleged bias must stem

---

[9] Plaintiffs note they "did not intend to go pro se" and that they "have found no attorney until STEVEN DAVIS – A PRIVATE INVESTIGATOR FOR MORTGAGE FRAUD that understood the truth of the housing crisis, the fraud that was wrought upon the Courts, and how banks to[ok] advantage of everyday trusting people." *Id*. at 7 (emphasis in original). The Court notes that non-attorneys cannot represent a party in a lawsuit and, even if Mr. Davis assisted Plaintiffs in filing an Amended Complaint, he could not help them bring claims they previously conceded during their bankruptcy.

from an "extrajudicial source." *Liteky v. United States*, 510 U.S. 540, 554–56. In *Liteky*,

the Supreme Court clarified the interplay between allegations of impartiality, personal bias,

and prejudice under §§ 455 and 455:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id*. at 555 (internal citation omitted).

    2. *Analysis*

Plaintiffs do not suggest recusal is appropriate under either § 144 or § 455, and have

not offered any legal support for the undersigned Judge's removal other than Idaho Rule

of Civil Procedure 63, which provides:

> If the trial judge is unable to perform the duties required after a verdict is returned or findings of fact and conclusions of law are filed, because of death, sickness or other *disability*, than any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties. If the other judge is satisfied that the judge cannot perform those duties, the judge may grant a new trial.

I.R.C.P. 63 (emphasis added).

Plaintiffs suggest the undersigned Judge has a "disability" under Idaho Rule of Civil

Procedure 63 because he "came into our case, tainted, and refused to look at or

acknowledge the fraudulent documents submitted to the court, or to acknowledge the merits of this case." Dkt. 42, at 3. Even if Idaho Rule of Civil Procedure 63 was applicable in federal court or relevant where, as here, the Judge is not sick, dead, or disabled, the undersigned cannot be said to have a "disability" simply because he decided against the Plaintiffs. Under the appropriate statutes regarding recusal, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Plaintiffs do not offer any facts or arguments that would justify departing from this principal.[10]

In the absence of a legitimate reason to recuse himself, "a judge should participate in the cases assigned." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (internal quotation marks and citation omitted). Without this general proposition in place, judges "could recuse [themselves] for any reason or no reason at all; [they] could pick and choose [their] cases, abandoning those that [they] find difficult, distasteful, inconvenient, or just plain boring." *Id*. Given a judge's obligation to participate in and resolve cases to which they have been assigned, Plaintiffs bear the burden of proving facts which justify recusal. *Denardo v. Municipality of Anchorage*, 974 F.2d 1200, 1201 (9th Cir. 1992) (citations omitted). As the only basis for Plaintiffs' recusal request is that the Court ruled against them in the Dismissal Order, the Motion to Recuse is appropriately denied.[11]

---

[10] Apart from criticizing the Dismissal Order and suggesting the Court's ruling warrants recusal, the Motion to Recuse repeats (almost verbatim) each of the arguments in the Motion for Reconsideration. As the Court has addressed such arguments above, it will not repeat its analysis here.

[11] Further, even if the Dismissal Order was somehow in error, Plaintiffs never address why the Court should accept their claims that the assignment to Nationstar was fraudulent, or that the Property is not subject to foreclosure, when they conceded that Nationstar was the secured creditor with a right to foreclose, and that the Property was subject to foreclosure, in their Bankruptcy Proceeding. Dkt. 36, at 14–19. Plaintiffs ignore

# V. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Plaintiffs' Motion for Reconsideration (Dkt. 37) is DENIED in its entirety, including Plaintiffs' request for a 45-day extension to file an amended complaint;

2. Plaintiffs' Motion for Recusal is DENIED;

3. Plaintiffs' case is DISMISSED, WITH PREJUDICE, in its entirety and CLOSED;

4. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: September 30, 2020

David C. Nye
Chief U.S. District Court Judge

---

the Court's judicial estoppel analysis all together. *See generally*, Dkt. 37; Dkt. 42. Plaintiffs are judicially estopped from filing claims based on Nationstar's conduct prior to the bankruptcy because, as the Court previously explained, such contentions are clearly inconsistent with their position in the Bankruptcy Proceeding, because Plaintiffs succeeded in persuading the Bankruptcy Court in accepting their prior position, and because Plaintiffs would derive an unfair advantage and impose an unfair detriment on Nationstar if not estopped. Dkt. 36, at 15–19; *see also New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). Plaintiffs do not challenge this finding now and also did not address judicial estoppel in any of their filings prior to the Dismissal Order. Plaintiffs' attempt to resurrect claims they have already conceded through both the Motion for Reconsideration and Motion for Recusal is inappropriate and is rejected.

MEMORANDUM DECISION AND ORDER - 16